**Affirmed in Part, Reversed and Remanded in Part, and Majority and Dissenting Opinions filed May 31, 2018.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-16-00210-CV

---

**O.C.T.G., L.L.P. AND SOJOURN PARTNERS, L.L.C., Appellants**

**V.**

**LAGUNA TUBULAR PRODUCTS CORPORATION AND LTP REAL ESTATE, L.L.C., Appellees**

---

**On Appeal from the 190th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2013-44749**

---

# M A J O R I T Y   O P I N I O N

In this contract case involving a variety of claims and counterclaims between two affiliated companies as plaintiffs/counterdefendants and two affiliated companies as defendants/counterplaintiffs, we conclude that the evidence is legally insufficient to support the total amount of damages found by the jury as to breach-of-contract and breach-of-warranty claims by one plaintiff against one defendant.

We also conclude that the trial court's award of actual damages to the other plaintiff on its breach-of-contract claim against the other defendant was legally sufficient. We affirm in part and reverse and remand in part.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Oil country tubular goods are metal pipes used by the oil and gas industry "downhole." Laguna Tubular Products Corporation provided heat-treatment and hydro-testing services of tubular goods at its facility in Houston. These services are sometimes called "processing." O.C.T.G., L.L.P. provided services involving threading and inspecting pipe—sometimes called "finishing."

### A. The Purchase Agreement and the Easement Agreement

Under the Purchase and Sale Agreement, Sojourn Partners, L.L.C., an affiliated company of OCTG, sold 26.48 acres of land to LTP Real Estate, L.L.C., an affiliated company of Laguna. Sojourn agreed to construct a rainwater retention pond on its remaining land for LTP's use, and LTP agreed to help pay for the construction. Under the Access Easement and Lease Agreement, LTP granted Sojourn an exclusive easement and right to use part of a building known as the Threading Area located on the land Sojourn had sold.

### B. The Finishing Agreement

Laguna built and operated its finishing business on the land LTP bought from Sojourn. Laguna and OCTG entered into a Tubular Finishing Services Agreement. Under the Finishing Agreement, OCTG promised to provide finishing services, including but not limited to threading, full-length ultrasonic testing, and electromagnetic testing.

Under the Finishing Agreement, OCTG warranted that all of OCTG's services would conform to applicable American Petroleum Institute standards and that when

2

there is no specific API standard, OCTG's services would meet or exceed applicable industry quality standards.

With exceptions not applicable to this case, the Finishing Agreement provides that "[OCTG] shall be in default if [it] fails to perform any of its duties or covenants hereunder, unless properly cured as set forth in Section 22.3." The non-defaulting party must give written notice of the acts, omissions, or failures constituting a default and provide the non-performing party with thirty days in which to cure the default.

### C. The Cimarex Complaint

Cimarex, an end-user of Laguna's product, discovered numerous defects in Laguna-processed pipe joints. According to Laguna, it learned that OCTG was not using Level 2 inspectors, as required by API standards. In early 2013, a potential customer wanted to assess OCTG's methods for finishing and inspecting a Laguna product that the customer planned to buy. The customer audited OCTG in the presence of Laguna's quality manager, Jose Luis Diaz. OCTG did not pass the audit. Diaz concluded that OCTG's inspection did not satisfy API standards. Laguna hired a third-party inspector to do a reinspection, and on August 1, 2013, Laguna sent OCTG notice of termination of the Finishing Agreement.

### D. Filing of suit by Laguna and LTP

Laguna and LTP sued OCTG and Sojourn, seeking money damages and removal of OCTG equipment from the Threading Area. The trial court granted Laguna and LTP a temporary injunction requiring OCTG to remove its threading machine from the Threading Area and enjoining it from conducting threading services in that area. OCTG and Sojourn filed an interlocutory appeal, and this court affirmed the temporary injunction. *See O.C.T.G., L.L.P. v. Laguna Tubular Prods., Corp.*, No. 14-13-00981-CV, 2014 WL 3512863, at *2-5 (Tex. App.—Houston

3

[14th Dist.] Jul. 15, 2014, no pet.) (mem. op.).

### E. Summary Judgment and Trial

The trial court granted partial summary judgment dismissing most of the counterclaims. The remaining claims, which included Laguna's claims, LTP's breach-of-contract claim, OCTG's counterclaim for breach of contract, and LTP's claim for trespass to real property against OCTG, proceeded to a jury trial.

At the close of evidence, the trial court granted a directed verdict on several claims. The jury then rendered a verdict finding, as relevant:

- OCTG failed to comply with the Finishing Agreement by failing to provide inspection services in compliance with the API Standards.

- OCTG's failure to comply with an express warranty was the proximate cause of damage to Laguna.

- The value of LTP's land on which a rainwater detention area was to be built (because Sojourn had not built the promised pond) is $150,000.

- The sum of $1,562,127 would fairly and reasonably compensate Laguna for its damages that resulted from OCTG's failure to comply with the Finishing Agreement.

- The sum of $1,562,127 would fairly and reasonably compensate Laguna for its damages that resulted from OCTG's breach of warranty.

The parties agreed to try the attorney's fees issues to the bench. The trial court found that reasonable and necessary fees for Laguna's contract claims against OCTG and for LTP's contract claim against Sojourn were $1,476,235.06 for prosecution of the case in the trial court.

The trial court denied various post-verdict motions and rendered judgment on the jury's verdict awarding (1) Laguna recovery against OCTG in the amount of

4

$1,562,127 in actual damages, plus prejudgment interest, postjudgment interest, and court costs, (2) LTP recovery against Sojourn for actual damages, plus prejudgment interest, postjudgment interest, and court costs, and (3) Laguna and LTP recovery against OCTG and Sojourn jointly and severally in the amount of $1,476,235.06 for reasonable and necessary attorney's fees in the trial court and other conditional awards of appellate attorney's fees in favor of Laguna and LTP and against OCTG and Sojourn. The trial court also permanently enjoined OCTG and Sojourn from reinstalling a threading machine in Laguna's Threading Area and from conducting threading services in that area. The trial court denied OCTG and Sojourn's motion for new trial.

## II. SUFFICIENCY CHALLENGES

In their first issue, OCTG and Sojourn assert various sufficiency challenges to the jury's findings. When reviewing the legal sufficiency of the evidence, we consider the evidence in the light most favorable to the challenged finding and indulge every reasonable inference that would support it. *City of Keller v. Wilson,* 168 S.W.3d 802, 822 (Tex. 2005). We must credit favorable evidence if a reasonable factfinder could and disregard contrary evidence unless a reasonable factfinder could not. *See id.* at 827. We must determine whether the evidence at trial would enable reasonable and fair-minded people to find the facts at issue. *See id.* The factfinder is the only judge of witness credibility and the weight to give to testimony. *See id.* at 819.

### A. Breach

OCTG asserts that the trial evidence is legally and factually insufficient to support the jury's liability findings against OCTG on breach of the Finishing Agreement and breach of express warranty. OCTG asserts that the only trial evidence on these topics was conclusory testimony. Specifically, OCTG asserts that

5

the testimony of Eddie Anaya (Laguna's CEO) and Jose Luis Diaz (Laguna's quality manager) was conclusory and therefore is not evidence that OCTG failed to comply with the terms of the Finishing Agreement. The Finishing Agreement required OCTG's inspections to meet API standards, procedures, requirements, and specifications.

Under the Finishing Agreement, OCTG was required to provide many types of inspections. Diaz testified that one way OCTG inspected pipes was by processing them through an electromagnetic-induction-inspection machine. If the machine notices a suspected defect in the piping, the machine separates the pipe, and a "prove up inspector" or "prove up operator" evaluates whether the pipe is in compliance or out of compliance with the specification requirements.

Trial evidence showed that OCTG's electromagnetic-induction-inspection machine could not pass inspection. Diaz explained that for the inspection process to work, the machine repeatedly must find defects that are a certain size. Diaz testified that the machine was unable to detect notches consistently, which is a violation of API specifications. According to Diaz, this created the risk that end users would receive defective pieces of pipe that would not comply with API standards.

Diaz explained that in addition to not having a working electromagnetic-induction-inspection machine, OCTG did not meet API requirements for inspecting separated pipe and that the API specifies that an individual inspecting the pipe separated by the machine must be certified as a Level 1, 2, or 3 inspector. The API requires inspection companies to keep documentation of certification on hand. Diaz testified that he was present when one of Laguna's potential customers, Vallourec, audited OCTG. Despite being given multiple opportunities, OCTG never was able to produce certification of its prove-up inspectors or prove-up operators.

OCTG asserts that the evidence that OCTG failed the audits is not any evidence that OCTG breached the Finishing Agreement because there is no evidence that the issues present during the audits were present when OCTG was performing work for Laguna. We disagree, as the evidence on this point went beyond the audits.

Diaz testified that he received an email from an end-user—Cimarex—stating that Cimarex reviewed piping it received from Laguna and found a defective joint. Diaz testified that Laguna sent a representative to look at the joint and that the Laguna employee confirmed that the defective joint had been inspected and threaded by OCTG. Diaz testified that OCTG should have inspected and rejected the piece of pipe because it did not meet API specifications. The joint contained marks of grinding, which is permissible under API specifications. But Diaz explained that under the API specifications, if an operator grinds down the pipe, the pipe wall still must be a certain thickness to prevent "blowup." The joint sent to Cimarex had three markings ground down to a thickness below the API minimum requirement. Laguna confronted OCTG about this issue in an email. OCTG responded by explaining that it could not pinpoint the root cause of the issue, but that OCTG experienced significant turnover in its inspection department in August and September 2012. Diaz testified that after receiving OCTG's response, Laguna hired a company, JPF, to reinspect all of the material sitting in Laguna's yard. Diaz observed the reinspection, which had a 3.6 percent rate of rejection for joints that OCTG had approved, totaling 1,169 joints.

OCTG asserts Laguna did not present any evidence that OCTG used the electromagnetic-induction-inspection machine after the audit showed the machine was failing, but the evidence, taken as a whole, shows that OCTG was not meeting API standards and that products inspected by OCTG did not meet those standards. We conclude the evidence is legally sufficient to support the jury's breach findings

7

in favor of Laguna.[1]  *See id.* at 823; *see also Nip v. Checkpoint Sys., Inc.*, 154 S.W.3d 767, 769–70 (Tex. App.—Houston [14th Dist.] 2004, no pet.).

## B. Causation

OCTG next asserts that the trial evidence is legally and factually insufficient to support the jury's findings that Laguna's damages were caused by OCTG's failure to comply with the Finishing Agreement and OCTG's breach of warranty.  OCTG argues that the evidence does not support these causation findings for the same reasons OCTG and Sojourn asserted the evidence does not support the jury's breach findings, an argument that we reject above.

## C. Limitation of liability provision

OCTG and Sojourn assert this court must set aside the damages found by the jury in response to damage questions for Laguna's breach-of-contract and breach-of-warranty claims because, in the Finishing Agreement, the parties agreed that OCTG would not be liable for damages resulting from its breach of the Finishing Agreement.  Instead, OCTG's sole obligation would "be to furnish substitute equivalent Services on substitute goods or, at [OCTG's] election, to repay or credit [Laguna] an amount equal to the price of the Services."

Texas Rule of Civil Procedure 94 requires an affirmative pleading of certain specified defenses and of "any other matter constituting avoidance or affirmative defense."  Tex. R. Civ. P. 94.  A contractual limitation-of-liability provision constitutes an avoidance or affirmative defense that a party must plead affirmatively. *See id*.; *see also Tacon Mech. Contractors, Inc. v. Grant Sheet Metal, Inc.*, 889 S.W.2d 666, 671 (Tex. App.—Houston [14th Dist.] 1994, writ denied). A party

---

[1] Because we decide below to reverse the trial court's judgment as to Laguna's breach-of-warranty and breach-of-contract claims against OCTG and remand these claims to the trial court for a new trial, we need not and do not address OCTG's factual sufficiency challenge.

waives an avoidance or affirmative defense if the party fails to plead it and the issue is not tried by consent. *See Tacon Mech. Contractors*, 889 S.W.2d at 671. OCTG neither pleaded that its liability was limited under the Finishing Agreement, nor was the limitation-of-liability issue tried by consent. Thus, OCTG has waived this issue. *See id.*

### D. Damages

OCTG asserts the trial evidence is legally and factually insufficient to support the jury's findings in response to the damages question for OCTG's breach of the Finishing Agreement and breach of express warranty. The jury found $1,562,127 in damages for OCTG's breach of contract and $1,562,127 in damages for OCTG's breach of warranty. OCTG and Sojourn argue that the evidence is legally and factually insufficient to support the jury's findings as to reasonable and necessary expenses under the legal standard set forth in *Dallas Railway and Terminal Co. v. Gossett* and its progeny. 294 S.W.2d 377, 382–83 (Tex. 1956); *see also McGinty v. Hennen*, 372 S.W.3d 625, 627–28 (Tex. 2012).

#### 1. Preservation

Before discussing this legal standard, we first consider whether OCTG preserved these appellate complaints in the trial court. Laguna and LTP assert that OCTG did not preserve error. In their motion for judgment notwithstanding the verdict, OCTG and Sojourn asserted that the record contained no evidence to support the jury's finding of $1,562,127 in damages resulting from the breach of the Finishing Agreement. OCTG and Sojourn did not assert a lack of evidence to support the jury's finding of $1,562,127 in damages resulting from OCTG's breach of warranty. But, in their motion for new trial, OCTG and Sojourn asserted legal insufficiency of the evidence to support the jury's damages findings in response to both questions. The trial court denied the motion for new trial. Laguna and LTP

9

appear to argue that OCTG was required to assert specifically that the evidence is legally insufficient as to the "reasonable and necessary" element of each question. We conclude that the complaints in the motion for new trial preserved error as to the legal-insufficiency arguments under OCTG's sub-issue. *See Arkoma Basin Expl. Co. v. FMF Assocs.*, 249 S.W.3d 380, 387–88 (Tex. 2008).

### 2. The *Gossett* principle

The normal measure of damages in a breach-of-contract case is the expectancy or benefit-of-the-bargain measure. *Mays v. Pierce*, 203 S.W.3d 564, 577 (Tex. App.—Houston [14th Dist.] 2006, pet. denied). The purpose of this measure of damages is to restore the injured party to the economic position it would have occupied had the contract been performed. *Clear Lake City Water Auth. v. Friendswood Dev. Co.*, 344 S.W.3d 514, 523 (Tex. App.—Houston [14th Dist.] 2011, pet. denied); *Mays*, 203 S.W.3d at 577. Here, the jury was instructed to consider only the following element of expectancy damages: "[t]he reasonable and necessary expenses incurred in the past by Laguna to re-inspect tubular goods previously inspected by [OCTG] and the reasonable and necessary expenses incurred by Laguna to secure alternative inspection and threading services, including transportation costs for a reasonable time following termination of the [Finishing Agreement]."

The party seeking to recover the cost of completion in a breach of contract case has the burden to prove that the damages sought are reasonable and necessary.[2] *Mustang Pipeline Co. v. Driver Pipeline Co.,* 134 S.W.3d 195, 200-01 (Tex. 2004). It is well settled that proof of amounts charged or paid does not raise an issue of

---

[2] Because the jury was asked to determine only this element of damages, we limit our analysis to the reasonable and necessary costs of completion. *See Osterberg v. Peca,* 12 S.W.3d 31, 55 (Tex. 2000) (("[T]he court's charge . . . measures the sufficiency of the evidence when the opposing party fails to object to the charge.").

10

reasonableness. *Gossett,* 294 S.W.2d at 383. Thus, evidence of the amounts charged or paid, by itself, is not legally sufficient evidence that these charges are reasonable and necessary; instead, separate evidence must be offered that raises a fact issue regarding the reasonableness and necessity of the expenses or costs in question. *See Mustang Pipeline Co.*, 134 S.W.3d at 200–01; *Gossett,* 294 S.W.2d at 382–83; *O & B Farms, Inc. v. Black,* 300 S.W.3d 418, 422–23 (Tex. App.—Houston [14th Dist.] 2009, pet. denied). To have raised a fact issue as to reasonableness and necessity of expenses, Laguna had to show more than simply "the nature of the injuries, the character of and need for the services rendered, and the amounts charged therefor." *Gossett*, 294 S.W.2d at 383. Instead, some other "evidence showing that the charges are reasonable" is required. *McGinty*, 372 S.W.3d at 627.

The *Mustang Pipeline* case illustrates this principle. In that case, Driver Pipeline Company agreed to build Mustang a pipeline. *Mustang Pipeline Co.*, 134 S.W.3d at 196. Unexpected weather prevented Driver from completing the task on time, and it sought an extension. *Id.* Mustang then contracted with another company to finish Driver's portion of the pipeline and sued Driver for breach of contract. *Id.* at 197. The jury found that Driver had breached the agreement and awarded Mustang $2 million, its out of pocket cost of completion. *Id.* The trial court and court of appeals, however, set aside that award. *Id*. at 197-98. The court of appeals reasoned that Mustang did not establish that the $2 million it paid the new company was a reasonable cost for the completion of the pipeline. *Id.* at 198. The Supreme Court of Texas agreed. *Id.* at 201.

Mustang's expert estimated the cost for the new company to complete the contract but did not opine about "whether that contracted amount was a reasonable cost to build a pipeline." *Id.* The high court noted that evidence of out-of-pocket costs alone "did not establish that the damages were reasonable and necessary." *Id.* Instead, the court found it "well settled that proof of the amounts charged or paid

11

does not raise an issue of reasonableness, and recovery of such expenses will be denied in the absence of evidence showing that the charges are reasonable." *Id.* (quoting *Gossett,* 294 S.W.2d at 383). Because Mustang failed to produce evidence on the reasonableness of its damages, the supreme court held that the trial court correctly set aside the damage award. *Id.*

In the *McGinty* case, the jury awarded the plaintiff, Hennen, both remedial and difference-in-value damages, and the trial court rendered judgment on the amount of remedial damages. 372 S.W.3d at 627. Hennen's expert provided the only evidence offered on reasonable remedial damages. *Id.* He derived his estimated costs of repair from an "Exactimate" program "that's used widely in the insurance industry." *Id.* The program had a Houston price guide, which he used to compare Houston prices to Corpus Christi prices and found them to be "within a percent or two difference." *Id.* The expert further testified that because not every price issued by the program is right, "we have to cross-reference and double check all our pricing." *Id.* And, finally, the expert testified that "some of the other costs came from subcontractors or historical data or jobs." *Id.*

The Supreme Court of Texas concluded that Hennen's evidence on reasonableness was quite similar to what the court found insufficient in *Mustang Pipeline. Id.* Estimated out-of-pocket expenses, like paid out-of-pocket expenses, do not establish that the cost of repair was reasonable. *Id.* at 627–28. Some other evidence is necessary. *Id.* at 628. Neither Hennen's damages expert nor any other witness testified that the estimated cost was reasonable. *Id.* Hennen argued that his expert testified extensively about how he derived his pricing estimate, which Hennen asserted is the same as reasonableness. *Id.* But, the high court concluded that although the expert explained how the figure was derived, that testimony did not in itself make the figure reasonable. *Id.*

The *McGinty* court stated that "[i]n some cases, the process will reveal factors

that were considered to ensure the reasonableness of the ultimate price." *Id*. But, the court concluded that the process in *McGinty* did not show such factors, and therefore, the trial evidence did not raise a fact issue as to whether the estimated cost of repair was reasonable. *See id*.

Today, we must apply the *Gossett* line of cases to determine whether the trial evidence is legally sufficient to support the jury's finding of damages based on the reasonable and necessary expenses incurred by Laguna. In response to both damages questions, the jury found the amount of damages incurred by Laguna to be $1,562,127. Laguna sought damages based on three categories: (1) reinspection costs, (2) transportation costs, and (3) amounts paid to Cimarex as reimbursement for reinspection expenses that Cimarex had incurred. We presume without deciding that the trial evidence is legally sufficient to support a finding that Laguna actually paid the amounts it alleges to have incurred in each of these categories, and we address whether the evidence is legally sufficient to show that the reinspection costs and the reimbursements to Cimarex were reasonable and necessary expenses.

### 3. Reinspection costs

Laguna asserts that it paid $327,632 to have joints reinspected and that these expenses were reasonable and necessary. Proof that Laguna incurred these reinspection costs, by itself, is legally insufficient to show that the expenses were reasonable and necessary. *See McGinty*, 372 S.W.3d at 627–28; *Mustang Pipeline Co.,* 134 S.W.3d at 200–01; *Gossett,* 294 S.W.2d at 382–83.

No trial witness explicitly testified that these reinspection expenses were reasonable and necessary. However, William Rowland, Laguna's Chief Operating Officer, testified that after Cimarex's discovery of a nonconforming joint, the audit reports showing defective equipment and personnel issues, and an investigation confirming the audit results, Laguna decided that the prudent course was to reinspect every accessible joint, although many of the joints already were downhole.

13

Moreover, Diaz, Laguna's quality manager, testified that a single defective joint can damage an entire well. Under the applicable standard of review, we conclude that the trial evidence is legally sufficient to support a finding that the reinspection costs were necessary. *See City of Keller*, 168 S.W.3d at 823; *Nip*, 154 S.W.3d at 769–70.

As to the reasonableness of those costs, Rowland testified that he selected the reinspectors as follows:

> We went through their [quality management systems]. We looked at their abilities to inspect. Also, who had the ability to do it on-site. We had 32,000 joints to inspect, so wanted to get it done on-site. And also somebody that could do a reasonable price and on time because it was going to take a little while to get this done.

After reviewing the trial evidence under the applicable standard of review, we conclude that the trial evidence regarding the process by which Laguna selected the reinspection contractors revealed factors that were considered to ensure the reasonableness of amount paid for reinspection. *See McGinty*, 372 S.W.3d at 627–28.

We conclude that under the *Gossett* line of cases, the trial evidence is legally sufficient to support a finding that the reinspection costs were reasonable and necessary expenses, and thus the evidence is legally sufficient to support a finding of at least $327,632 in damages for Laguna's breach-of-contract and breach-of-warranty claims. *See id*.

### 4. Cimarex costs

Laguna offered evidence at trial showing that it had reimbursed Cimarex $276,850 for amounts Cimarex had paid to reinspect pipes. Proof that Laguna incurred these expenses, by itself, is legally insufficient to show that the expenses were reasonable and necessary. *See id.*; *Mustang Pipeline Co.,* 134 S.W.3d at 200–01; *Gossett,* 294 S.W.2d at 382–83. No trial witness testified that these reinspection expenses were reasonable or that they were necessary. We presume for the sake of

14

argument that these expenses were necessary.

Though Rowland testified as to how he chose contractors who performed reinspection services for Laguna, no trial evidence showed how *Cimarex* chose reinspection contractors. No witness testified that Cimarex chose contractors who would charge a reasonable price.

After reviewing the trial evidence under the applicable standard of review, we conclude that, as to the costs that Laguna reimbursed to Cimarex for reinspection services, the trial evidence did not reveal factors that were considered to ensure the reasonableness of the amount paid. *See McGinty*, 372 S.W.3d at 627–28. So, applying the standard from the *Gossett* line of cases, we conclude that the trial evidence is legally insufficient to support a finding that the Cimarex Costs were reasonable expenses.[3] *See id*.

### 5. Remand

Under the applicable standard of review, the trial evidence is legally insufficient to support the full amount of the jury's findings as to damages incurred by Laguna. Although the trial evidence is legally insufficient to support a finding of $1,562,127 in damages as to either question, the evidence is legally sufficient to support a finding of a lesser amount of damages. In this context, the proper remedy is to reverse and remand for a new trial. *See Formosa Plastics Corp. USA v. Presidio Eng'rs and Contrs., Inc.,* 960 S.W.2d 41, 51 (Tex. 1998) (holding that appellate court can remand for new trial when no evidence supports damages awarded but there is evidence of some damages). Because liability was contested and the damages are unliquidated, we remand for a new trial on both liability and damages as to Laguna's breach-of-warranty and breach-of-contract claims against OCTG.

---

[3] Because we have concluded that some of the damages amounts found by the jury were legally sufficient and some were legally insufficient, we do not reach the third category of damages, transportation costs, as the appellate remedy is unaffected.

15

*See* Tex. R. App. P. 44.1(b) (stating that appellate court may not order separate trial solely on unliquidated damages if liability is contested); *JLG Trucking, LLC v. Garza*, 466 S.W.3d 157, 165 n.8 (Tex. 2015); *Johnston v. McKinney Am., Inc.,* 9 S.W.3d 271, 284 (Tex. App.—Houston [14th Dist.] 1999, pet. denied). Thus, we sustain OCTG and Sojourn's first issue to the extent OCTG and Sojourn assert that the evidence is legally insufficient to support the jury's findings of damages to Laguna.[4] We reverse the trial court's judgment as to Laguna's breach-of-warranty and breach-of-contract claims against OCTG and remand these claims to the trial court for a new trial.[5]

Having concluded that Laguna presented legally sufficient evidence of damages and causation but legally insufficient evidence of the total amount of damages found by the jury, we overrule in part and sustain in part OCTG and Sojourn's first issue.

## III. SUMMARY JUDGMENT RULINGS AS TO COUNTERCLAIMS

In their eleventh issue, OCTG and Sojourn assert that the trial court erred in granting Laguna and LTP's combined no-evidence and traditional motion for summary judgment as to OCTG and Sojourn's counterclaims for breach of warranty, negligent misrepresentation, fraud, and rescission.

In reviewing a no-evidence summary judgment, we ascertain whether the

---

[4] Because we already have decided to reverse the trial court's judgment as to Laguna's breach-of-warranty and breach-of-contract claims against OCTG and remand these claims for a new trial, we need not address OCTG's assertion that the evidence is factually insufficient to support these findings.

[5] We note as well that OCTG and Sojourn, in their motion for new trial, requested only a new trial and did not request rendition of judgment. In this context, under Supreme Court of Texas precedent, the only proper appellate remedy for legal insufficiency of the evidence is a reversal of the judgment as to the two claims and a remand for a new trial. *See Werner v. Colwell,* 909 S.W.2d 866, 870, n.1 (Tex. 1995); *Horrocks v. Tex. Dep't of Transp.,* 852 S.W.2d 498, 499 (Tex. 1993) (per curiam).

16

nonmovant presented summary-judgment evidence raising a genuine issue of fact as to the essential elements attacked in the no-evidence motion. *Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 206–08 (Tex. 2002). In a traditional motion for summary judgment, if the movant's motion and summary-judgment evidence facially establish its right to judgment as a matter of law, the burden shifts to the nonmovant to raise a genuine, material fact issue sufficient to defeat summary judgment. *See M.D. Anderson Hosp. & Tumor Inst. v. Willrich*, 28 S.W.3d 22, 23 (Tex. 2000). In our de novo review of a trial court's summary judgment, we consider all the evidence in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not. *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006). The evidence raises a genuine issue of fact if reasonable and fair-minded jurors could differ in their conclusions in light of all of the summary-judgment evidence. *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755 (Tex. 2007). When, as in this case, the order granting summary judgment does not specify the grounds upon which the trial court relied, we must affirm the summary judgment if any of the independent summary-judgment grounds has merit. *FM Props. Operating Co. v. City of Austin,* 22 S.W.3d 868, 872 (Tex. 2000).

## A. Breach-of-Warranty, Negligent-Representation, and Fraud Claims

In their no-evidence summary-judgment motion, Laguna and LTP contended, among other grounds, that OCTG and Sojourn could present no evidence that they suffered damages related to any breach of warranty or negligent misrepresentation. Laguna and LTP further asserted that there was no evidence as to elements of OCTG and Sojourn's fraud claims that (1) Laguna and LTP made a false representation or (2) Laguna and LTP made a representation knowing that it was false or that the

17

representation was made recklessly, as a positive assertion, without knowledge of its truth.

In their response, the only evidence OCTG and Sojourn cited was their answers to interrogatories. OCTG and Sojourn's answers to interrogatories are not competent summary-judgment evidence. *See Morgan v. Anthony*, 27 S.W.3d 928, 929 (Tex. 2000) (noting that generally, a party cannot rely on its own answer to an interrogatory as summary-judgment evidence); *Smitherman v. Bank of America, N.A.*, No. 14-14-00550-CV, 2015 WL 1622180, at *3 (Tex. App.—Houston [14th Dist.] Apr. 7, 2015, pet. denied) (mem. op.) (holding party's answer to interrogatory was not competent summary-judgment evidence).

OCTG and Sojourn did not adduce competent summary-judgment evidence raising a fact issue as to whether OCTG and Sojourn suffered damages related to any alleged breach of warranty or negligent representation by Laguna and LTP or that Laguna and LTP made a false representation or a representation made knowing it was false. The trial court did not err in granting Laguna and LTP's summary-judgment motion as to OCTG's breach-of-warranty, negligent-misrepresentation, and fraud claims.

## B. Rescission

In their counterclaims, OCTG and Sojourn sought rescission as an equitable remedy for the allegedly fraudulent conduct of Laguna and LTP. In their traditional motion, Laguna and LTP sought summary judgment as to the rescission remedy, arguing, among other grounds, that OCTG and Sojourn could not receive rescission because their misrepresentation and fraud claims failed as a matter of law. OCTG and Sojourn argued generally that Laguna and LTP's unclean hands should preclude them from arguing that Laguna and LTP would be unfairly prejudiced by rescission. "A party seeking rescission and restitution must first establish a substantive right to

18

avoidance of the transaction in question." *Kennebrew v. Harris*, 425 S.W.3d 588, 595 (Tex. App.—Houston [14th Dist.] 2014, pet. denied) (citing Restatement (Third) of Restitution and Unjust Enrichment § 54 cmt. a.). We have concluded the trial court did not err in granting summary judgment as to their misrepresentation and fraud claims. Therefore, we further conclude the trial court did not err in granting summary judgment as to the equitable remedy of rescission. *See id*.

We overrule OCTG and Sojourn's eleventh issue.

## IV.   RETENTION POND LAND VALUE

Sojourn next asserts that the trial court erred in awarding LTP $150,000 based on the jury's finding as to the value of land on which a retention pond was to be built. Under the Purchase Agreement, Sojourn agreed to provide, on its remaining contiguous property, such rainwater detention areas as necessary to accommodate the improvements to be constructed on LTP's land. LTP agreed to reimburse Sojourn for the cost of the required construction. It is undisputed that Sojourn breached this obligation only a few months after the purchase.[6] Trial testimony showed that because Laguna's worksite was required by law to have a pond, LTP needed to build a pond on its own land.

The jury charge included the following question: "What is the value of [LTP's] land on which a rainwater detention area is to be built?" Sojourn objected to the charge and requested that the court inquire about the "market value" or, alternatively, the "fair-market value" of the land. The trial court overruled this objection and refused the request. On appeal, Sojourn asserts that the trial court erred in doing so and that we should review the sufficiency of the evidence under

---

[6] It is also undisputed that on LTP's behalf, Laguna paid Sojourn via OCTG $255,000 to build the pond and that Sojourn kept the money. The trial court included that amount in the judgment. That award is not challenged on appeal.

19

the requested jury question and hold that LTP offered no evidence of market value.

We conclude that, under the circumstances of this case, the trial court properly overruled Sojourn's objection and refused its tendered jury question. As mentioned, the normal measure of damages for breach of contract is the benefit of the bargain, which is intended to restore the injured party to the economic position it would have been in had the contract been performed. *Mays*, 203 S.W.3d at 577. The objective in awarding damages for a breach of contract is to provide just compensation for the loss actually sustained by the complaining party. *Tenn. Gas Pipeline Co. v. Technip USA Corp.,* No. 01-06-00535-CV, 2008 WL 3876141, at *5 (Tex. App.—Houston [1st Dist.] Aug. 21, 2008, pet. denied) (mem. op.) (citing *Phillips v. Phillips*, 820 S.W.2d 785, 788 (Tex. 1991)). Such damages are measured at the time of breach, not the time of trial. *Miga v. Jensen*, 96 S.W.3d 207, 214 (Tex. 2002); *see also Elness Swenson Graham Architects, Inc. v. RLJ II-C Austin Air, LP*, 520 S.W.3d 145, 161 (Tex. App.—Austin 2017, pet. filed) (collecting definitions of "benefit of the bargain").

LTP offered uncontradicted evidence that as a result of the breach, it would be required to build a retention pond on two acres of the land it had purchased from Sojourn. Had the contract been performed, LTP would have had the use of a retention pond as well as the entire acreage it had purchased. To restore LTP to the economic position it would have been in had Sojourn performed under the agreement, LTP is entitled to recover the amount it had recently paid to purchase the two acres it could no longer use.[7] The trial court did not err in refusing to change the measure of damages to the present market value of those acres.[8]

---

[7] We do not address whether this question contained other defects because no other objections were made.

[8] OCTG and Sojourn also argue the trial testimony was legally insufficient because the witnesses failed to testify as to the market value of the land. Given that present market value is

20

We recognize that fair market value at the time of trial is an appropriate damage measure in many cases involving real estate, including condemnation cases and cases alleging damage to the value of realty. But that is not this case. On the facts of this particular breach-of-contract case, allowing LTP to recover what it had paid for the two acres shortly before Sojourn's breach prevented it from using that land puts LTP in the same economic position as if the contract had been performed.

We therefore use the charge as given to analyze Sojourn's argument that the evidence is legally insufficient to support the jury's value finding of $150,000. *Osterberg v. Peca*, 12 S.W.3d 31, 55 (Tex. 2000). At trial, Eddie Anaya testified that Laguna was under a county requirement to build a retention pond and that Laguna will have to build the retention pond on its own on LTP's property. Anaya testified that it was his understanding that the retention pond would take two acres of land to build. Anaya testified that he estimated each acre had a minimum value of $75,000 and noted that that sum was the amount LTP paid per acre when it bought the 26.48 acres from Sojourn in the Purchase Agreement. Anaya testified that LTP's minimum amount of damages would be $150,000 for the two acres needed to build the retention pond.

William Rowland (LTP's chief operating officer) testified that the county told Laguna it was in violation of the requirement for it to have a retention pond. Rowland testified Laguna had looked into alternatives to building a retention pond, and the only option was for Laguna to give up part of its yard and build a pond on LTP's land. Rowland testified that he estimated the size of the pond would be about two acres and that LTP paid $75,000 per acre when it bought the land.

Sojourn contends that the evidence that two acres was required to build the

---

not the proper measure of damages here, we conclude that this failure did not render the testimony legally insufficient.

21

pond was conclusory. A conclusory statement is one that expresses a factual inference without providing underlying facts to support that conclusion. *Padilla v. Metro. Transit Auth. of Harris Cty.,* 497 S.W.3d 78, 85 (Tex. App.—Houston [14th Dist.] 2016, no pet.) In *Padilla*, we held that a statement that "for months at a time all entrances and exits were blocked" was not conclusory because it was a statement of fact for which Padilla provided background facts that explained the basis of his factual statement—how he knew they were blocked. *Id*. at 86.

Here, Rowland testified that his role as chief operating officer of LTP is to oversee most of its operations. When he started working for LTP in 2013, the pond "still didn't exist." Rowland sent an e-mail to OCTG in which he stated "from what I have been able to find out based on the [] Agreement, the [engineering cost estimate] and the Plans, it looks like we are still missing the detention pond." The attached engineering cost estimate called for "design of assumed 200,000 sf detention pond [4.5 acres]." After a meeting with OCTG, Rowland sent another e-mail, stating:

> If I understand you correctly, OCTG has substantially changed their physical operations to the extent that Harris County required a new engineering of the [pond]. You mentioned that the new engineering making the pond bigger was complete. . . . Would you . . . forward copies of the new engineering, Harris County permit application and the information on the construction.

In a third e-mail to OCTG, Rowland referenced engineering drawings in his possession. He also advised OCTG that "storm water and drainage was the business I was in for 15 years." Also, Rowland had discussions with Harris County officials about the pond and what LTP needed to do to avoid being red-tagged until the pond is built.

We conclude that Rowland's knowledge of the engineering bid calling for a 200,000 square foot pond, background in the storm water and drainage business, and

negotiations with Harris County officials about their requirements for a pond provide the basis for Rowland's factual statement that two acres was required to build the pond. *See id.*

OCTG and Sojourn further contend that Rowland and Anaya were not qualified to testify as to the value of LTP's land. But they did not testify as expert witnesses; instead, they properly testified as representatives of the corporate property owner under the property-owner rule. The property-owner rule establishes that an owner is qualified to testify to the value of his property; nonetheless, such testimony must meet the same requirements as any other opinion evidence. *Natural Gas Pipeline Co. of Am. v. Justiss*, 397 S.W.3d 150, 156 (Tex. 2012); *see also* Tex. R. Evid. 701. An owner may not simply state in a conclusory manner the owner's opinion as to the property's value; the property owner must provide the factual basis on which the opinion rests. *Justiss*, 397 S.W.3d at 157. This burden is not onerous, particularly in light of the resources available today. *Id.* at 159. Evidence of price paid and any other relevant factors may be offered to support the claim. *Id.*

Appellants alternatively seek a new trial, arguing that the trial court erred in admitting the testimony of Anaya and Rowland because Anaya was not qualified to testify and Rowland had not been designated to testify about fair market value. Because we conclude that Rowland and Anaya properly testified under the property-owner rule, we reject the alternative argument. We therefore overrule appellants' eighth issue.

## V. ATTORNEY'S FEES

In its judgment, the trial court awarded Laguna and LTP recovery against OCTG and Sojourn jointly and severally in the amount of $1,476,235.06 for reasonable and necessary attorney's fees in the trial court and other conditional awards of appellate attorney's fees in favor of Laguna and LTP and against OCTG

23

and Sojourn. The award was not apportioned between Laguna's claims and those of LTP. In their ninth issue, OCTG and Sojourn assert that this court should reverse these attorney's fee awards if this court reverses the trial court's judgment.

Because we are reversing the trial court's judgment as to Laguna's breach-of-warranty and breach-of-contract claims against OCTG and remanding these claims to the trial court for a new trial and because the attorney's fees awarded to Laguna were based on the successful prosecution of these two claims, we also reverse and remand all awards of attorney's fees to Laguna. *See* Tex. Civ. Prac. & Rem. Code § 38.001(8); *see also Parkway Dental Assocs., P.A. v. Ho & Huang Props., L.P.,* 391 S.W.3d 596, 612 (Tex. App.—Houston [14th Dist.] 2012, no pet.). And, although we affirm LTP's claim for damages as to the retention pond, we cannot affirm any attorney's fees award in favor of LTP because it was not segregated from the attorney's fee award in favor of Laguna. Thus, we reverse and remand that award as well. *See Kinsel v. Lindsey*, 526 S.W.3d 411, 428 (Tex. 2017) (reversing and remanding award of unsegregated attorney's fees for reconsideration). We accordingly sustain appellants' ninth issue.

## VI. PERMANENT INJUNCTION

In their twelfth issue, OCTG and Sojourn assert that this court should dissolve the trial court's permanent injunction restraining OCTG and Sojourn from reinstalling a threading machine in Laguna's Threading Area and from conducting threading services in that area. OCTG and Sojourn argued in their pleadings that Laguna and LTP wrongfully and forcibly removed OCTG and Sojourn from the Threading Area on LTP's land, including by use of a court order, and that Laguna and LTP had caused Sojourn to incur damages as a result.

Laguna and LTP respond that the issue is moot because LTP sold the land on which the Threading Area is located to a third party in 2016. Because OCTG alleged

damages from actions by Laguna and LTP before the 2016 sale, we conclude the issue is not moot.

OCTG and Sojourn argue that the permanent injunction should be dissolved because (1) Laguna and LTP sought injunctive relief on the ground that OCTG's failure to remove its equipment from LTP's property constituted a trespass; (2) the jury found against LTP on its trespass claim; and (3) Laguna and LTP have not appealed and thus have not challenged the trial court's take-nothing judgment on LTP's trespass claim. But, in their live pleading, Laguna and LTP sought injunctive relief based not only on the trespass claim but also to enforce LTP's alleged property rights and to avoid irreparable harm. *See* Tex. Civ. Prac. & Rem. Code § 65.011(5); *see also 1717 Bissonnet, LLC v. Loughhead*, 500 S.W.3d 488, 507 (Tex. App.— Houston [14th Dist.] 2016, no pet.). Thus, LTP's failure to recover on its trespass claim did not preclude the trial court from granting the permanent injunction. We overrule issue twelve and affirm the trial court's permanent injunction.

## VII. JURY CHARGE

In their tenth issue, OCTG and Sojourn assert that the trial court erred in refusing to submit to the jury a question asking whether LTP granted Sojourn either an easement or an irrevocable license to the Threading Area. OCTG and Sojourn argue that the question was essential to the defense of Laguna and LTP's trespass claim and request for injunctive relief.

A trial court reversibly errs when it denies a party proper submission of a valid theory of recovery or a vital defensive issue raised by the pleadings and evidence. *Exxon Corp. v. Perez*, 842 S.W.2d 629, 631 (Tex. 1992). However, here, OCTG and Sojourn were permitted to argue and present evidence of their defense to the trespass claim, including their argument that LTP granted Sojourn either an easement or license to the Threading Area. The jury was instructed that trespass is

25

an *unauthorized* entry upon the land of another. The trial judge properly submitted the controlling question to the jury. She was not required, and in fact should not have, submitted different shades of the same question. *Mayes v. Stewart*, 11 S.W.3d 440, 455 (Tex. App.—Houston [14th Dist.] 2000, pet. denied); *see also* Tex. R. Civ. P. 278. OCTG and Sojourn, therefore, have failed to establish any error in the trial court's refusal to submit their requested question. Issue ten is overruled.

## VIII. CONCLUSION

The trial evidence is legally insufficient to support the jury's damages findings for breach of contract and breach of warranty against OCTG. Although the trial evidence is legally insufficient to support a finding of $1,562,127 in damages as to either finding, the evidence is legally sufficient to support findings of a lesser amount of damages. Because liability was contested and the damages are unliquidated, we reverse the trial court's judgment as to Laguna's breach-of-warranty and breach-of-contract claims against OCTG and remand these claims to the trial court for a new trial on liability and damages. Because we are reversing the trial court's judgment as to these claims and because the attorney's fees awarded to Laguna were based on the successful prosecution of these claims, we also reverse all awards of attorney's fees to Laguna. Moreover, because the attorney's fees award to LTP was not segregated from the attorney's fee award in favor of Laguna, we reverse and remand that award as well. We affirm the remainder of the trial court's judgment.[9]

Because we reverse the trial court's judgment as to Laguna's breach-of-warranty and breach-of-contract claims against OCTG and remand these claims to

---

[9] OCTG and Sojourn have filed a "Motion to Strike Matters Outside the Record," and we have taken that motion with the case. OCTG and Sojourn complain that certain documents attached to Laguna and LTP's brief are not in our appellate record. In adjudicating this appeal, we have not relied on any documents that are not in our appellate record. We deny the motion to strike.

26

the trial court for a new trial, we need not and do not address issues two through seven.


                              /s/    Martha Hill Jamison
                                     Justice



Panel consists of Chief Justice Frost and Justices Jamison and Busby (Frost, C.J., dissenting).