**Affirmed in Part, Reversed in Part, and Remand in Part and Memorandum Opinion filed January 24, 2023.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-21-00159-CV

---

## ADVANTECH CONSTRUCTION SYSTEMS, LLC AND LUIS G. HIGAREDA, Appellants

### V.

## MICHALSON BUILDERS, INC. AND MICHAEL CZAPSKI, Appellees

---

**On Appeal from the County Civil Court at Law No. 4
Harris County, Texas
Trial Court Cause No. 1089883**

---

## MEMORANDUM OPINION

In this construction dispute between a general contractor and a subcontractor, the subcontractor challenges the sufficiency of the evidence in support of a judgment in the general contractor's favor after a bench trial. The claims at issue in this appeal are the general contractor's fraudulent lien and breach of contract claims and the subcontractor's counterclaims and third-party claims for breach of contract and misapplication of construction trust funds. For the reasons below, we affirm in part,

reverse the trial court's award of attorney's fees, and remand to the trial court for further proceedings limited to reconsideration of attorney's fees.

## *Background*

Woods Edge Equity, LLC hired Michalson Builders, Inc. to build a house on piers. Michalson was the general contractor for this residential construction project, and Michaelson hired AdvanTech Construction Systems, LLC, to construct the foundation. To form the foundation of this suspended structure, steel I-beams would be placed on top of the piers and then foam panels, structural steel rebar, and forms would be used to hold the concrete in place while it was being poured.

Michalson began drilling into the ground for piers and then discovered that the title company had failed to identify an easement on the property. Because of this omission, the previously planned slab design would encroach into the easement. The slab design had to be modified to be moved outside the easement. This modification also resulted in pier and beam locations being changed. AdvanTech created several sets of revised plans pursuant to the changes. These changes in plans delayed the project by several months.

Michalson and AdvanTech's relationship was rife with disputes. Michalson complained that AdvanTech did not adequately staff the project, resulting in delays, and that the workers did not have appropriate tools and materials. Some of the panels were lost or damaged due to a flood, but there was a dispute as to how many panels were affected. Michalson agreed to two change orders to cover the changes to the project and replace missing panels.

Finally, Michalson and AdvanTech had a dispute about implementing a requested change to the height of the slab. This final dispute culminated in AdvanTech leaving the job. Michalson then sent a 24-hour notice asking AdvanTech

to "man the project with an adequate amount of skilled workmen" and warning that "[f]ailure to do so will result in Michalson" hiring another crew. AdvanTech did not return to the jobsite, and Michalson hired another crew to finish the job.

Advantech's general manager, Luis Higareda, recorded a mechanic's lien against the property, which included incorrect amounts owed and other incorrect information. AdvanTech released that lien approximately one year later but recorded an affidavit from Higareda claiming a "constitutional lien." Higareda attested that Michalson was "believed to be a 'sham contractor' as that term is known in Texas law and is, therefore, listed as a reputed owner."

Michalson brought claims against AdvanTech and Higareda for fraudulent lien, breach of oral contract, fraud, negligent misrepresentation, negligence, and negligent hiring. AdvanTech and Higareda brought counterclaims against Michalson and third-party claims against Woods Edge and Michael Czapski, president of Michalson, for breach of contract, under the prompt payment act, to foreclose lien, and for misapplication of construction trust funds.[1]

AdvanTech, Higareda, and Woods Edge signed a settlement agreement releasing their claims against each other. AdvanTech then recorded a release of its "lien claim" against the property "as well as any other lien rights belonging to . . . AdvanTech . . . relating to or arising from the work it performed." AdvanTech also moved to dismiss its claims against Woods Edge, which the trial court granted.

The remaining claims were tried to the bench, which included (1) Michalson's fraudulent lien claims against AdvanTech and Higareda and breach of contract claim

---

[1] Michalson alone asserted claims as the plaintiff, but AdvanTech and Higareda brought Czapski into the case through third-party claims. We refer to "Michalson" or "Michalson and Czapski" as appropriate when addressing claims brought by Michalson or defenses advanced by Michalson and Czapski.

against AdvanTech, and (2) AdvanTech's counterclaims and third-party claims against Michalson for breach of contract and against Czapski for misapplication of construction trust funds. After trial, the trial court rendered judgment in Michalson and Czapski's favor and awarded Michalson actual damages, attorney's fees, costs, and pre- and postjudgment interest. The trial court signed findings of fact and conclusions of law, finding, in relevant part, that (1) AdvanTech and Higareda intentionally filed false mechanic's liens, and (2) Michalson and AdvanTech had an oral contract, which AdvanTech breached.

## *Discussion*

In four issues, AdvanTech and Higareda challenge the sufficiency of the evidence in support of the trial court's (1) award of attorney's fees against AdvanTech and Higareda on Michalson's lien removal claims, (2) award of contract damages to Michalson, (3) denial of contract damages to AdvanTech, and (4) failure to hold Czapski liable for misapplication of construction trust funds. AdvanTech and Higareda also challenge the trial court's jurisdiction over Michalson's lien removal claims.

We defer to a trial court's findings of fact after a bench trial when the findings are supported by the record and review conclusions of law de novo. *Sw. Elec. Power Co. v. Lynch*, 595 S.W.3d 678, 683 (Tex. 2020). In reviewing the trial court's decision for legal sufficiency of the evidence, we use the same standards applied in reviewing the evidence supporting a jury's finding. *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994); *Schear Hampton Drywall, LLC v. Founders Commercial, Ltd.*, 586 S.W.3d 80, 85 (Tex. App.—Houston [14th Dist.] 2019, no pet.). Our legal sufficiency review requires us to review the evidence in the light most favorable to the challenged finding and indulge every reasonable inference that would support it, crediting favorable evidence if a reasonable factfinder could and disregarding

4

contrary evidence unless a reasonable factfinder could not. *City of Keller v. Wilson*, 168 S.W.3d 802, 822, 827 (Tex. 2005).

We sustain a legal sufficiency or "no evidence" challenge only when (1) the record discloses a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence establishes conclusively the opposite of the vital fact. *Marathon Corp. v. Pitzner*, 106 S.W.3d 724, 727 (Tex. 2003); *Schear Hampton Drywall*, 586 S.W.3d at 85. A party attacking the legal sufficiency of an adverse finding on an issue on which it had the burden of proof must show that the evidence conclusively establishes all vital facts in support of the issue. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001). When a party challenges the legal sufficiency of the evidence on a finding on which it did not bear the burden of proof, the party must show that no evidence supports the finding. *Exxon Corp. v. Emerald Oil & Gas Co., L.C.*, 348 S.W.3d 194, 215 (Tex. 2011); *Schear Hampton Drywall*, 586 S.W.3d at 86.

In reviewing factual sufficiency, we examine the entire record, considering both the evidence in favor of and contrary to the challenged findings. *Mar. Overseas Corp. v. Ellis*, 971 S.W.2d 402, 406–07 (Tex. 1998); *Schear Hampton Drywall*, 586 S.W.3d at 86. When a party attacks the factual sufficiency of an adverse finding on which it bore the burden of proof, it must establish that the finding is against the great weight and preponderance of the evidence. *Dow Chem. Co.*, 46 S.W.3d at 242; *Schear Hampton Drywall*, 586 S.W.3d at 86. When a party challenges the factual sufficiency of the evidence supporting a finding on which it did not have the burden of proof, we may set aside the finding only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Mar. Overseas Corp.*, 971

S.W.2d at 407; *Schear Hampton Drywall*, 586 S.W.3d at 86. If we determine the evidence is factually insufficient, we must detail the evidence relevant to the issue and state in what regard the contrary evidence greatly outweighs the evidence supporting the trial court's judgment; we need not do so when affirming the judgment. *Gonzalez v. McAllen Med. Ctr., Inc.*, 195 S.W.3d 680, 681 (Tex. 2006); *Schear Hampton Drywall*, 586 S.W.3d at 86.

We apply these standards mindful that the factfinder is the sole judge of the credibility of the witnesses and the weight to be given to their testimony, and we indulge every reasonable inference in support of the factfinder's findings. *See City of Keller*, 168 S.W.3d at 819, 822; *Schear Hampton Drywall*, 586 S.W.3d at 86. When, as here, there is a complete reporter's record of the trial, the trial court's findings of fact will not be disturbed on appeal if there is any evidence of probative force to support them. *See Barrientos v. Nava*, 94 S.W.3d 270, 288 (Tex. App.—Houston [14th Dist.] 2002, no pet.). Likewise, incorrect conclusions of law will not require reversal if the controlling facts support a correct legal theory. *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002). We turn to the issues presented.

### I. Attorney's Fees

In their first issue, AdvanTech and Higareda bring numerous arguments challenging the sufficiency of the evidence in support of the trial court's award of attorney's fees on Michalson's fraudulent lien claims. AdvanTech and Higareda argue (1) the fraudulent lien claims were not before the trial court because AdvanTech voluntarily discharged both liens; (2) the claims were released when AdvanTech and Higareda settled with Woods Edge; (3) Higareda is not personally liable; (4) the attorney's fees were required to be segregated but were not; and (5) the attorney's fees award is not equitable. AdvanTech and Higareda also allege the trial

6

court, as a county civil court at law, lacked jurisdiction to remove the liens and the issue is moot. Since the latter issues are jurisdictional, we address them first.

### A. Jurisdiction over Lien Removal

AdvanTech and Higareda argue the county civil court at law lacked jurisdiction over Michalson's lien removal claims. Whether a court has subject matter jurisdiction is a question of law that we review de novo. *Haas v. Ashford Hollow Cmty. Improvement Ass'n*, 209 S.W.3d 875, 879 (Tex. App.—Houston [14th Dist.] 2006, no pet.).

County Civil Court at Law No. 4 of Harris County is a statutory county court. Tex. Gov't Code § 25.1031(4); *see Eris v. Giannakopoulos*, 369 S.W.3d 618, 620 (Tex. App.—Houston [1st Dist.] 2012, pet. dism'd). Section 25.0003 of the Government Code sets forth the general rule governing jurisdiction of statutory county courts. Tex. Gov't Code § 25.0003(a) ("A statutory county court has jurisdiction over all causes and proceedings, civil and criminal, original and appellate, prescribed by law for county courts."); *Haas*, 209 S.W.3d at 879. Section 25.1032 contains additional jurisdictional provisions particular to Harris County civil courts at law. Tex. Gov't Code § 25.1032(a); *Haas*, 209 S.W.3d at 879–80. The statute provides that "[i]n addition to other jurisdiction provided by law, a county civil court at law" *also* "has jurisdiction to . . . hear a suit for the enforcement of a lien on real property." Tex. Gov't Code § 25.1032(d)(3).

According to AdvanTech and Higareda, jurisdiction to hear a suit to enforce a lien on property does not include jurisdiction over a suit to remove a lien. Presuming without deciding that AdvanTech and Higareda are correct, Harris County civil courts at law also have jurisdiction over certain cases under the general statutory jurisdictional grant. *See Haas*, 209 S.W.3d at 879–80. Harris County civil courts at law have concurrent civil jurisdiction with constitutional county courts at

7

law. Tex. Gov't Code § 25.1032(a) ("A county civil court at law in Harris County has jurisdiction over all civil matters and causes, original and appellate, prescribed by law for county courts, but does not have the jurisdiction of a probate court."), *see Eris*, 369 S.W.3d at 620. When, as here, a statutory county court has concurrent civil jurisdiction with a constitutional county court, it also has concurrent jurisdiction with the district court in civil cases in which the matter in controversy exceeds $500 but not $250,000. Tex. Gov't Code § 25.0003(c)(1); *see also Eris*, 369 S.W.3d at 620. In other words, Harris County civil courts at law have concurrent jurisdiction with district courts in which the amount in controversy falls within the statutory jurisdictional dollar limit for statutory county courts. *See Eris*, 369 S.W.3d at 620 (citing *Cont'l Coffee Prods. Co. v. Cazarez*, 937 S.W.2d 444, 448 (Tex. 1996)). Nothing in these provisions indicates that the legislature intended to exclude suits to remove a lien from the county court's concurrent jurisdiction. *See Cont'l Coffee Prods.*, 937 S.W.2d at 448.

It is undisputed that the amounts in controversy were over $500 and under $250,000. We conclude that the county court at law had jurisdiction over Michalson's lien removal claims because the claims are within the amount-in-controversy range over which Harris County courts at law have concurrent jurisdiction with district courts. We need not decide whether the additional jurisdictional grant over suits for the enforcement of a lien on real property also encompass suits for removal of a lien. We next address whether the lien removal claims were moot at the time of trial.

## B. Lien Removal Claims Not Moot

AdvanTech and Higareda argue Michalson's lien removal claims were moot prior to trial because AdvanTech released both liens before trial and the trial court dismissed AdvanTech's lien enforcement claims. A case becomes moot if a

controversy ceases to exist or the parties lack a legally cognizable interest in the outcome. *Allstate Ins. Co. v. Hallman*, 159 S.W.3d 640, 642 (Tex. 2005). But a dispute over attorney's fees is a live controversy. *Id*. Here, Michalson filed suit seeking, in part, to remove the liens, and the issue of attorney's fees was presented to the trial court. On appeal, we must resolve whether Michalson was entitled to those fees. Accordingly, this is a live issue and not moot. *See id*. We turn to the merits of AdvanTech and Higareda's first issue.

### C. Availability of Attorney's Fees for Lien Removal Claims

AdvanTech and Higareda argue Michalson was not entitled to attorney's fees for its lien removal claims. The trial court concluded AdvanTech and Higareda filed two false mechanic's liens and awarded attorney's fees to Michalson under Property Code section 53.156, which provides in relevant part, "[I]n any proceeding to declare that any lien or claim is invalid or unenforceable in whole or in part, the court shall award costs and reasonable attorney's fees as are equitable and just." Tex. Prop. Code § 53.156. AdvanTech and Higareda argue the trial court erred in awarding Michalson attorney's fees because (1) the first lien was released before Michalson had any time entries for attorney's fees; (2) Michalson did not bring an action to remove the second lien; (3) the trial court's judgment does not foreclose or declare any lien invalid or unenforceable; (4) AdvanTech released the second lien and the trial court dismissed AdvanTech's lien foreclosure claim; (5) the second lien is a constitutional lien, which arose automatically from AdvanTech's performance of the work; and (6) Michalson was Woods Edge's agent and thus is bound by the terms of AdvanTech and Higareda's settlement with Woods Edge.

**Lien Releases and Lien Removal Claims**. Higareda recorded the first lien on July 14, 2016. Michalson, represented by The Mastriani Law Firm, filed a verified summary motion to remove that lien on February 24, 2017. AdvanTech then

filed an "Affidavit Claiming Constitutional Lien," which we refer to as the second lien, on August 16, 2017 and recorded a withdrawal and release of the first lien the next day.[2] On or before October 17, 2019, AdvanTech and Higareda then brought a third-party claim against Woods Edge and a counterclaim against Michalson to foreclose the second lien.[3] Michalson's trial counsel Christopher Thornhill substituted into the case in February 2019, replacing The Mastriani Law Firm. Michalson did not seek to recover any attorney's fees charged by The Mastriani Law Firm. AdvanTech and Higareda assert their settlement with Woods Edge released the second lien on March 6, 2020 and the dismissal of the lien foreclosure claim disposed of the lien removal claims on March 10, 2020.

AdvanTech and Higareda's position on appeal is that Michalson did not bring an action to remove the second lien or defend against AdvanTech and Higareda's lien foreclosure claim. AdvanTech and Higareda thus assert the attorney's fees that Michalson sought at trial are not affiliated with any lien removal claims because the first lien was released before Thornhill substituted into the case and the second lien had been released by the time of trial. However, Michalson's live petition includes a claim for "fraudulent lien." The pleading states, "Plaintiff re-urges all applicable claims from the previously filed pleadings in regards *to any and all fraudulent liens filed against the property* made the basis of this lawsuit." (Emphasis added.) Thus, the live petition covers all allegedly "fraudulent liens filed against the property." During trial, Michalson presented evidence in support of its allegation that AdvanTech and Higareda filed two fraudulent liens. Michalson also presented

_____

[2] AdvanTech and Higareda refer to the first lien as the pro se lien and the second lien as the constitutional lien.

[3] This is an approximate date because our record only contains AdvanTech and Higareda's third amended answer, counterclaims, and third-party claims and not any prior versions of that pleading.

evidence and argued it was entitled to attorney's fees "incurred for removing a false mechanics [lien]." The record thus supports the finding that Michalson incurred attorney's fees on its lien removal claims because it advanced those claims at trial.

AdvanTech and Higareda also argue that the trial court's judgment does not foreclose or declare any lien invalid or enforceable. But the trial court found that AdvanTech and Higareda filed false liens on or about July 16, 2016 and August 16, 2017, "[i]nclud[ed] charges for work on an unapproved payment application for work that was never performed or approved and [knew] those charges were false when they were reflected in the amount owed on lien," "[i]ntentionally reflect[ed] the work was performed in 2016 to attempt to comply with statutory requirements while knowing the work was performed in 2015," and "[c]laim[ed] money is owed to AdvanTech when it is not," and "Higareda intentionally and/or in the alternative filed a mechanics lien when he knew or should have known the lien was filed incorrectly and contained false information." Accordingly, the trial court made findings as to the validity and enforceability of the liens.

AdvanTech and Higareda's remaining arguments regarding the lien releases and lien removal claims are similarly unpersuasive. Although AdvanTech eventually released both liens and the trial court dismissed the lien foreclosure claim, as discussed, the fraudulent lien claims were nonetheless advanced during trial without objection, and the trial court ruled on those issues.[4] Accordingly, Michalson incurred fees in asserting those claims during trial.

Finally, AdvanTech and Higareda's argument regarding the distinction between constitutional and statutory liens is confusing at best. AdvanTech and Higareda seem to imply that attorney's fees are not recoverable in actions to remove

___

[4] Michalson offered the second lien into evidence. AdvanTech and Higareda initially objected but then withdrew their objection.

a constitutional lien. But the statute makes no distinction between statutory and constitutional liens. The statute allows the trial court to award attorney's fees in "proceeding to declare that *any* lien or claim is invalid or unenforceable in whole or in part." *Id*. (emphasis added.)

**Agency**. AdvanTech and Higareda also assert that Michalson brought the lien removal claims as an agent for Woods Edge and thus the settlement agreement with Woods Edge released Michaelson's lien removal claims. AdvanTech and Higareda had the burden to prove agency. *See MEMC Pasadena, Inc. v. Riddle Power, LLC*, 472 S.W.3d 379, 399 (Tex. App.—Houston [14th Dist.] 2015, no pet.) ("An agency relationship will not be presumed, and the party asserting the relationship has the burden to prove its existence."); *see also Miles v. Plumbing Servs. of Houston, Inc.*, 668 S.W.2d 509, 511 (Tex. App.—Houston [14th Dist.] 1984, writ ref'd n.r.e.) ("[Subcontractor] had the burden to prove agency [of general contractor]; it cannot be presumed to exist."). AdvanTech and Higareda point to no evidence showing Michalson was an agent for Woods Edge. Moreover, Michalson was not a party to the settlement agreement with Woods Edge. AdvanTech and Higareda have not shown on this record that Michalson was an agent for Woods Edge.

## D. Personal Liability against Higareda

AdvanTech and Higareda challenge the trial court's award of attorney's fees against Higareda personally for the lien removal claims. According to AdvanTech and Higareda, Higareda signed the second lien as an authorized agent for AdvanTech, not as an individual. Michalson argues that Higareda is personally liable because the trial court found that he filed two false liens and did so intentionally and knowingly and thus committed fraudulent or tortious acts while in the service of AdvanTech.

The general rule is well established in Texas that an agent is personally liable

for his own torts even if he acts at the principal's command. *Grand Overseas Destinations, Inc. v. Baker Hughes, Inc.*, No. 14-98-01427-CV, 2000 WL 1508827, at \*4 (Tex. App.—Houston [14th Dist.] Oct. 12, 2000, pet. denied) (mem. op.); *cf. Steward Health Care Sys. LLC v. Saidara*, 633 S.W.3d 120, 150 (Tex. App.—Dallas 2021, no pet.) (Schenck, J., concurring) (regarding corporate agents) ("[T]his Court and other Texas courts of appeals—although not the Texas Supreme Court—have suggested that a corporate agent can . . . be held liable. . . for . . . committing a tort or wrong while engaged in the business of the corporate principal based on the agent's personal acts."); *Stull v. LaPlant*, 411 S.W.3d 129, 135 (Tex. App.—Dallas 2013, no pet.) (regarding corporate agents) ("[A] corporate agent can be held liable for committing a tort or wrong while engaged in the business of the corporate principal based on the agent's personal acts."), *overruled on other grounds by Steward Health Care Sys.*, 633 S.W.3d 120; *Shapolsky v. Brewton*, 56 S.W.3d 120, 133 (Tex. App.—Houston [14th Dist.] 2001, pet. denied) ("It is the general rule in Texas that corporate agents are individually liable for fraudulent or tortious acts committed while in the service of their corporation."), *disapproved of on other grounds by Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 788 (Tex. 2005).

Section 343 of the *Restatement (Second) of Agency* sets out this rule as follows:

> An agent who does an act otherwise a tort is not relieved from liability by the fact that he acted at the command of the principal or on account of the principal, except where he is exercising a privilege of the principal, or a privilege held by him for the protection of the principal's interests, or where the principal owes no duty or less than the normal duty of care to the person harmed.

Restatement (Second) of Agency § 343 (Am. L. Inst. 1958). Under this general rule, an agent's liability is based on the agent's own actions, and not his status as agent.

13

*Grand Overseas Destinations*, 2000 WL 1508827, at *4.

Accordingly, under this general rule, Higareda would be liable for his own tortious acts. However, Advantech and Higareda argue that Higareda is shielded from liability under Business Organizations Code section 101.114, which is applicable to limited liability companies such as AdvanTech and provides, "Except as and to the extent the company agreement specifically provides otherwise, a member or manager is not liable for a debt, obligation, or liability of a limited liability company, including a debt, obligation, or liability under a judgment, decree, or order of a court." Tex. Bus. Orgs. Code § 101.114.

Presuming without deciding that the statute would shield a member or manager of an LLC from tortious acts such as fraud, there is no evidence that Higareda is a member or manager of AdvanTech as defined under the statute. To be sure, Higareda testified that he was the "general manager" of the company, but a manager of an LLC has specific responsibilities under the statute. An LLC is required to have a "governing authority" consisting of "the managers of the company, if the company agreement provides that the company is managed by one or more managers; or . . . the members of the company, if the company agreement provides that the company is managed by the members." Tex. Bus. Orgs. Code § 101.251; *see also Nguyen v. Nguyen*, No. 14-19-00913-CV, 2021 WL 786628, at *6 (Tex. App.—Houston [14th Dist.] Mar. 2, 2021, no pet.) (mem. op.). The record in this case does not show that Higareda was a "governing person" under the statute, and we do not have the company agreement in our record to ascertain that information. *See, e.g.*, *Nguyen*, 2021 WL 786628, at *6.

AdvanTech and Higareda also argue Higareda is shielded from personal liability under section 21.223(a)(2) of the Business Organizations Code. Section 21.223(a)(2) provides,

A holder of shares, an owner of any beneficial interest in shares, or a subscriber for shares whose subscription has been accepted, or any affiliate of such a holder, owner, or subscriber or of the corporation, may not be held liable to the corporation or its obligees with respect to . . . any contractual obligation of the corporation or any matter relating to or arising from the obligation on the basis that the holder, beneficial owner, subscriber, or affiliate is or was the alter ego of the corporation or on the basis of actual or constructive fraud, a sham to perpetrate a fraud, or other similar theory.

Tex. Bus. Orgs. Code § 21.223(a)(2). Section 21.223(a)(2) also applies to "a limited liability company and the company's members, owners, assignees, affiliates, and subscribers." Tex. Bus. Orgs. Code § 101.002(a). Because there is no evidence on this record that Higareda is an owner, assignee, affiliate, or subscriber of the LLC, he has not shown that section 21.223(a)(2) applies.

Because the record does not show that either of the liability shield statutes relied on by Higareda applies under these circumstances, the general rule applies, and Higareda is liable for his own torts despite his agency status.

### E. Segregation Required

Having found no merit in the above arguments, we turn to AdvanTech and Higareda's argument that Michalson failed to segregate its fees. Michalson argues that attorney's fees were available for both of its lien claim and breach of contract claim, so it was not required to segregate. We disagree.

**Section 38.001 Applicability**. We first address whether attorney's fees are recoverable against a limited liability company under section 38.001. *See Alta Mesa Holdings, L.P. v. Ives*, 488 S.W.3d 438, 452-53 (Tex. App.—Houston [14th Dist.] 2016, pet. denied).

The availability of attorney's fees under a particular statute is a question of law for the court. *Holland v. Wal–Mart Stores, Inc.*, 1 S.W.3d 91, 94 (Tex. 1999). In

construing a statute, our main goal is to determine and give effect to the legislature's intent. *Nat'l Liab. & Fire Ins. Co. v. Allen*, 15 S.W.3d 525, 527 (Tex. 2000). To do so, we look primarily to the language of the statute itself, as we consider it "a fair assumption that the Legislature tries to say what it means, and therefore the words it chooses should be the surest guide to legislative intent." *Fitzgerald v. Advanced Spine Fixation Sys., Inc.*, 996 S.W.2d 864, 866 (Tex. 1999). If a statute defines a term, courts are bound to construe that term by its statutory definition. Tex. Gov't Code § 311.011(b); *Tex. Dep't of Transp. v. Needham*, 82 S.W.3d 314, 318 (Tex. 2002). Under the "American Rule," "litigants may recover attorney's fees only if specifically provided for by statute or contract." *Epps v. Fowler*, 351 S.W.3d 862, 865 (Tex. 2011).

Michalson sought attorney's fees, among other things, for its breach of contract claim under section 38.001, which provides that "[a] person may recover reasonable attorney's fees from an individual or organization other than a quasi-governmental entity . . . , in addition to the amount of a valid claim and costs, if the claim is for ... an oral or written contract." *See* Tex. Civ. Prac. & Rem. Code § 38.001(b)(8).

Notably, section 38.001 was amended to allow recovery of attorney's fees against all types of for-profit business organizations for lawsuits filed on or after September 1, 2021. Tex. Civ. Prac. & Rem. Code § 38.001 (amended effective September 1, 2021 to allowing recovery of attorney's fees for breach of contract from an "organization" as defined under Business Organizations Code section 1.002). Michalson, however, was required to establish the availability of attorney's fees under the version of the statute applicable to this case.

As section 38.001 was previously written, a party could only recover its attorney's fees where the party brought one of the enumerated claims against an

16

"individual" or a "corporation." Act of May 17, 1985, 69th Leg., R.S., ch. 959, § 1, sec. 38.001, 1985 Tex. Gen. Laws 3242, 32.78, *amended by* Act of May 28, 2021, 87th Leg., R.S., ch. 665.[5] This lawsuit, however, was filed (and a final judgment signed) before to September 1, 2021, the effective date of the amendment. Act of May 28, 2021, 87th Leg., R.S., ch. 665, § 3 ("This Act takes effect September 1, 2021.").

Accordingly, section 38.001 does not authorize attorney's fees for Michalson's breach of contract claim against AdvanTech.[6] Nevertheless, the inquiry does not end here.

**Fee Segregation**. We next address AdvanTech's argument that Michalson had a duty to segregate fees. Under the segregation rule, "fee claimants [are] required to segregate fees between claims for which they are recoverable and claims for which they are not." *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 311 (Tex. 2006); *see Sterling Title Guar. Co. v. Sterling*, 822 S.W.2d 1, 12 (Tex. 1991). "Intertwined facts do not make tort fees recoverable; it is only when discrete legal services advance both a recoverable and unrecoverable claim that are so intertwined that they need not be segregated." *Tony Gullo Motors I, L.P.* at 311. When segregation is required, attorneys do not have to keep separate time records for each claim. *Id.* at 314. Rather, segregation is sufficiently established if an attorney testifies that a given percentage of fees would have been incurred even if the claim for which attorney's fees are unrecoverable had not been asserted. *Id.*; *see also State Farm Lloyds v.*

---

[5] The former version of the statute reads, in relevant part:

> A person may recover reasonable attorney's fees from an individual or corporation, in addition to the amount of a valid claim and costs, if the claim is for . . . an oral or written contract."

[6] The trial court's conclusion of law stated "[t]he contract and the breach thereof apply to . . . [AdvanTech] only, and it is the sole liable party for the breach of contract and ensuing damages. [Higareda], individually, is not liable for the breach of contract thereof."

*Hanson*, 500 S.W.3d 84, 102 (Tex. App.—Houston [14th Dist.] 2016, pet. denied); *Jarvis v. Rocanville Corp.*, 298 S.W.3d 305, 320 (Tex. App.—Dallas 2009, pet. denied).

The need to segregate attorney's fees is a question of law, and the extent to which certain claims can or cannot be segregated is a mixed question of law and fact. *Id.* at 312–13; *CA Partners v. Spears,* 274 S.W.3d 51, 81 (Tex. App.—Houston [14th Dist.] 2008, pet. denied). When a fee claimant fails to properly segregate attorney's fees, we may remand the issue to the trial court for reconsideration. *Kinsel v. Lindsey*, 526 S.W.3d 411, 428 (Tex. 2017); *Tony Gullo Motors*, 212 S.W.3d at 314.

Here, the trial court awarded Michalson $33,866.53 in attorney's fees, and in its findings of fact, stated that "[t]he attorney's fees incurred by [Michalson] were reasonable and necessary and had been segregated for those fees incurred for removing a false mechanics lien." AdvanTech posits that Michalson's recoverable and unrecoverable claims are not so inextricably intertwined that they need not be segregated. We agree.

In his declaration in support of attorney's fees, Christopher M. Thornhill, Michalson's attorney, described the claims against which he defended Michalson and the legal services he and his associates provided during that representation, including: (1) reviewing the initial lien filed on the property and drafting and filing a verified motion to remove invalid lien; (2) reviewing Advantech's original answer and counterclaims and all amendments and supplements thereto; (3) drafting the answer to the counterclaims and supplemental petitions against Advantech and all amendments and supplements thereto; (4) preparing and filing a motion for summary judgment; (5) attending hearings; (6) drafting and filing numerous motions; (7) creating a litigation strategy for the case; and (8) attending and participating in a

18

three-day bench trial on the matter.[7] Thornhill asserted that Michalson incurred attorney's fees in the amount of $33,866.53.

Further, Thornhill asserted that Michalson's defenses to AdvanTech's counterclaims "arose out of the same nucleus of facts or the same transactions or occurrences as the ones underpinning [Michalson's] claims—that is validity, enforceability, meaning, application, and effect of the contract and also the validity of [AdvanTech and Higareda's] liens." Thornhill explained in his opinion that he did not need to segregate attorney's fees between defending against Advantech's claims and pursuing its own because the "discrete legal services performed by [Michalson's] counsel advanced both recoverable and unrecoverable claims or defenses, making those fees and services inextricably intertwine[d]." *See Tony Gullo Motors*, 212 S.W.3d at 313–314; *see Am. Int'l Indus., Inc. v. Scott*, 355 S.W.3d 155, 162–63 (Tex. App. – Houston [1st Dist.] 2011, no pet.).

We are not persuaded that Michalson and Czapski's breach of contract claim and fraudulent lien claim are so "intertwined that they need not be segregated." *Tony Gullo Motors I*, 212 S.W.3d 299 at 311. Even though the final judgment stated that the attorney's fees incurred by Michalson "have been segregated for those fees incurred for removing a false mechanics [lien]," there is no evidence in the record that the fees for the recoverable and nonrecoverable claims were segregated. Thornhill attached to his declaration a billing spreadsheet detailing dates, hours spent, hourly rate, and a narrative description of the legal services performed. The billing spreadsheet does not differentiate between claims for which attorney's fees are recoverable (i.e. false mechanic's liens) and claims for which they are not (i.e. breach of contract). *Id.* The billing spreadsheet does indicate that Thornhill removed

---

[7] Thornhill's represents Michalson and Czapski and collectively refers to them as "Czapski" in his declaration. In this discussion, we refer to "Czapski" as "Michalson and Czapski."

The Mastriani Law Firm time and fees from the calculation of fees and then reduced the remaining balance by 10%. This 10% reduction, however, does not amount to a segregation of fees for recoverable and nonrecoverable claims because Thornhill asserted that this "10% reduction across the board . . . capture[d] and eliminate[d] . . . any duplicative, unnecessary, excessive, unproductive, or inadequately documented fees." There is no other evidence supported by the record that Michalson attempted to otherwise reduce the attorney's fees. Further, Michalson presented evidence and argued they were entitled to "substantial attorney's fees for [its] breach of contract [claim] under [section] 38 and for efforts in removing the [mechanic's] liens." In support thereof, Michalson and Czapski elicited copious testimony and presented considerable evidence regarding its breach of contract claim against AdvanTech.[8]

As discussed above in section E-1, *supra*, section 38.001 does not authorize attorney's fees for Michalson's breach of contract claim against AdvanTech in this case. Our court has previously determined that, when unsegregated attorney's fees claims are affirmed in part and reversed in part, the proper disposition is to reverse the fee award and remand for reconsideration of attorney's fees. *See O.C.T.G., LLP v. Laguna Tubular Prods. Corp.*, 557 S.W.3d 175, 193 (Tex. App.—Houston [14th Dist.] 2018, pet. dism'd by agr.). Given the disposition of the issues in this case, we reverse the fee award against AdvanTech and Higareda and remand the case for further proceedings limited to reconsideration. *See* Tex. R. Civ. P. 131 (awarding costs to "successful party to a suit"); *O.C.T.G., LLP*, 557 S.W.3d at 193; *see also* Tex. R. App. P. 44.1(b) (court must consider whether issues on remand are "separable without unfairness to the parties"). Michalson's failure to segregate its attorney's fees does not mean they cannot recover any fees. Unsegregated attorney's

---

[8] In its conclusion of law, the trial court found that only AdvanTech breached the contract.

fees for the entire case are some evidence of what the segregated amount should be. *See Stewart Title Guar. Co.*, 822 S.W.2d at 12.

Accordingly, we sustain AdvanTech's first issue as to the segregation of the fee award only.

### F. Equity of Attorney's Fees Award

AdvanTech and Higareda finally argue as to the attorney's fees award that it is not equitable and just because Higareda made pro se lien mistakes on the first lien and, according to AdvanTech and Higareda, Michalson did not challenge the second lien. The statute states that a trial court "shall" award costs and fees in an action to foreclose a lien "as are equitable and just." Tex. Prop. Code § 53.156. Awarding fees in an equitable and just manner falls into the trial court's discretion. *Schear Hampton Drywall*, 586 S.W.3d at 94. A trial court abuses its discretion when it acts arbitrarily, unreasonably, or without regard to guiding legal principles. *Id.*

Here, the trial court admitted evidence that the first lien was signed under oath and contained numerous misstatements regarding the year the work was performed, the amount of work performed, the amount due, and service of notice of the lien. The deadline for filing a lien was "not later than the 15th day of the third month after the month in which the original contractor's work was completed, terminated, or abandoned." Tex. Prop. Code § 53.052. The trial court, as factfinder, could reasonably conclude that the lien incorrectly stated when the work was completed due to an attempt to circumvent this deadline and not due to mistakes resulting from a non-attorney filing the lien.

As to the second lien, we disagree with AdvanTech and Higareda's assertion that Michalson did not challenge that lien, as discussed above. That lien, moreover, included incorrect information characterizing Michalson as an owner of the

property. The trial court reasonably could have concluded that information was included on the lien in bad faith.

AdvanTech and Higareda argue, however, that there was a sham contract between Michalson, Czapski, Woods Edge, and another company. Under this theory, AdvanTech and Higareda posit that Michalson and Czapski controlled all the relevant entities and the construction project. But there is no evidence on this record that Michalson and Czapski owned or controlled Woods Edge, which AdvanTech and Higareda were required to show to establish their sham contract theory under the version of the Property Code applicable to this case.[9]

For the foregoing reasons, we sustain AdvanTech and Higareda's first issue as to the segregation of fees; otherwise, we overrule AdvanTech and Higareda's first issue.

## II.    Breach of Contract Damage Findings Supported by Sufficient Evidence

The trial court awarded breach of contract damages in favor of Michalson for $39,802.34. In their second issue, AdvanTech and Higareda challenge the sufficiency of the evidence in support of the trial court's award of damages for breach of contract to Michalson against AdvanTech, contending (1) Michalson

---

[9] The former version of the statute reads, in relevant part:

> A person who labors, specially fabricates materials, or furnishes labor or materials under a direct contractual relationship with another person is considered to be in direct contractual relationship with the owner and has a lien as an original contractor, if: . . . the owner contracted with the other person for the construction or repair of a house, building, or improvements and that other person can effectively control the owner through ownership of voting stock, interlocking directorships, or otherwise.

Act of May 19, 1997, 75th Leg., R.S., ch..526, § 4, sec. 53.0026(a), 1997 Tex. Gen. Laws 1880, 1881 (Tex. Prop. Code § 53.026(a)(2), *amended by* Act of May 28, 2021, 87th Leg., R.S., ch. 690, § 7, sec. 53.0026(a).

received a double recovery because its costs were paid by Woods Edge, (3) there is no evidence the damages award was reasonable; (4) Michalson did not procure a finding that the breach of contract was material or that AdvanTech repudiated the contract; and (5) there is no evidence tying AdvanTech's required scope of work to the damages awarded. As to the issue involving damages awarded outside AdvanTech's required scope of work, we conclude that Michalson did not present evidence showing AdvanTech was responsible for the increased height of the slab but Michalson did present evidence of increased costs resulting from the need to hire another contractor to finish the project. Accordingly, we reverse the judgment in part and remand for further proceedings on AdvanTech's breach of contract claim, as discussed below. However, we address the other issues challenging the damages award first because if AdvanTech and Higareda were to prevail on one of those issues, the appropriate remedy would be to reverse and render in AdvanTech's favor on the breach of contract claim. *See Bradleys' Elec., Inc. v. Cigna Lloyds Ins. Co.*, 995 S.W.2d 675, 677 (Tex. 1999) ("Generally, when a party presents multiple grounds for reversal of a judgment on appeal, the appellate court should first address those points that would afford the party the greatest relief.") (citing Tex. R. App. P. 43.3).

### A. No Double Recovery

AdvanTech and Higareda argue that Michalson invoiced Woods Edge for its costs and Woods Edge paid Michalson so the contract damages award permits a double recovery. Michalson argues that the double recovery rule does not apply and even if it did, Michalson presented evidence that it incurred damages for additional costs resulting from AdvanTech's breach that were not passed on to Woods Edge.

Texas law does not permit double recovery. *Parkway Co. v. Woodruff*, 901 S.W.2d 434, 441 (Tex. 1995). When the prevailing party fails to elect between

alternative measures of damages, the court should render the judgment affording the greatest recovery. *Id*. Here, Michalson did not elect between alternative measures of damages. Michalson did not bring any claims against Woods Edge in this lawsuit.

Moreover, Michalson presented evidence that it was not paid in full by Woods Edge. Czapski testified,

> [W]e were shorted . . . like, $200,000 at the end of the project by the owner. So the question is where those funds got applied to. We don't break it out on a single invoice statement. We say we have not been paid on the entire job. So the question is where those funds get applied to. We don't break it out on a single invoice statement. We say we have not been paid on the entire job. We don't look at it as a specific, we weren't paid for this invoice or that invoice. We look at it as a whole.

AdvanTech and Higareda argue that there was evidence that Woods Edge paid Michalson for all costs related to the foundation project. However, in considering the evidence as a whole, the trial court, as factfinder, reasonably could have concluded that Michalson did not receive a double recovery because Woods Edge did not pay Michalson in full. *See Schear Hampton Drywall*, 586 S.W.3d at 86 ("We apply these standards mindful that the factfinder is the sole judge of the credibility of the witnesses and the weight to be given to their testimony, and we indulge every reasonable inference in support of the factfinder's findings.").

### B. Damages Award Reasonable

AdvanTech and Higareda also contend that there is insufficient evidence that the damages awarded were reasonable. There are two measures of damages for the breach of a construction contract: (1) remedial damages, which is the cost to complete or repair less the unpaid balance on the contract price, and (2) difference-in-value damages, which is the difference between the value of the building as constructed and its value had it been constructed according to the contract. *McGinty v. Hennen*, 372 S.W.3d 625, 627 (Tex. 2012). A party seeking to recover remedial

24

damages must prove that the damages sought are reasonable and necessary. *Id.* (citing *Mustang Pipeline Co. v. Driver Pipeline Co.*, 134 S.W.3d 195, 200 (Tex. 2004) (per curiam)). To establish that, the plaintiff must show more than simply "the nature of the injuries, the character of and need for the services rendered, and the amounts charged therefor." *Id*. Instead, some other "evidence showing that the charges are reasonable" is required. *Id*. However, "reasonable" and "necessary" are not magic words that a witness must speak to support a damages award. *Gilbane Bldg. Co. v. Two Turners Elec. Co.*, No. 14-05-00908-CV, 2007 WL 582252, at *8 (Tex. App.—Houston [14th Dist.] Feb. 27, 2007, pet. denied) (mem. op.). Instead, a party need only present sufficient evidence to support the finding. *Id*. Out-of-pocket expenses do not establish that the cost of repair was reasonable. *McGinty*, 372 S.W.3d at 627–28. Some other evidence is necessary. *Id*. at 628. In some cases, the process will reveal factors that were considered to ensure the reasonableness of the ultimate price. *Id*.

Here, the trial court awarded remedial damages. No trial witness explicitly testified that the expenses incurred to hire another subcontractor were reasonable and necessary. However, Michalson's construction superintendent Juan Perez testified, "It's a higher cost [to bring in a new contractor versus using the existing one] because no contractor wants to come in on a job that's already been started. So they're [sic] pricing is going to be really steep." Czapski testified it would have been cheaper to keep AdvanTech on the job:

> It's definitely cheaper, and it's generally less messy to keep the guy on the job. That's why we sticked [sic] with him for so long through all these problems and headaches. We were really just hoping he would finish it because . . . it was substantially more expensive to have somebody else go in there and finish it after him.

Michalson also presented evidence comparing the original costs to the

25

completion costs. The original cost of the project was to be $77,400. Michalson approved change orders of $6,790 for a total of $84,190. The additional cost of completion of the project was $39,802.34, which is consistent with the trial testimony that bringing in another contractor would be "substantially more expensive," but it was less than half of the original cost of the project. Based on this evidence, a rational factfinder could have concluded that the completion costs were reasonable and necessary. *See, e.g.*, *O.C.T.G., L.L.P. v. Laguna Tubular Products Corp.*, 557 S.W.3d 175, 187 (Tex. App.—Houston [14th Dist.] 2018), pet. granted without consideration of merits, judgments of court of appeals & trial court vacated, & case remanded to trial court for rendition of judgment in accordance with parties' settlement agr., (No. 18-0906 (Tex. May 10, 2019).

## C. Findings on Material Breach or Repudiation Not Required

AdvanTech and Higareda also complain that Michalson did not procure a finding on material breach of contract or repudiation. First, materiality is not a required element of breach of contract.[10] *See S & S Emergency Training Sols., Inc. v. Elliott*, 564 S.W.3d 843, 847 (Tex. 2018) (listing elements). Second, the trial court found that AdvanTech breached the contract. It was not additionally required to find AdvanTech repudiated the contract. We conclude these arguments are without merit.

## D. Offset for Slab Height Increase Not Required

AdvanTech and Higareda also argue that there is no evidence that the damages awarded were within the scope of the job to be performed by AdvanTech. In a nutshell, they contend that they were entitled to an offset for the increased height of the slab because the plans called for an eight-inch slab and the contractor that

---

[10] The case cited by AdvanTech and Higareda is inapposite because it involves the affirmative defense of prior material breach. *See Earth Power A/C & Heat, Inc. v. Page*, 604 S.W.3d 519, 524 (Tex. App.—Houston [14th Dist.] 2020, no pet.). Here, Michalson brought breach of contract as a claim, not the affirmative defense of prior material breach.

replaced AdvanTech installed a thirteen-inch slab.

Michalson contends AdvanTech did not "request any additional cost based on the design change" and the changes to the project were nominal. But in support of this argument, Michalson relies on Czapski's testimony regarding changes to the project involving revised engineering drawings that changed I-beam placement. Czapski was not referring to later changes to the project involving increased slab height. However, AdvanTech and Higareda presented evidence that they requested approval of the slab height change by an engineer before they would agree to the change. Higareda testified that the increase in slab height would change the cost and the scope of work. He said he would anticipate a "change of that magnitude" to cost "a lot." He estimated the cost would be $30,000 to $40,000. Michalson did not present any evidence that contradicted this testimony.

Despite this testimony from Higareda, however, Michalson presented other evidence that it incurred extra costs related to AdvanTech's performance. Czapski testified that AdvanTech did not adequately supervise the project, lacked organization, and understaffed the project. Czapski also testified that AdvanTech's employees did not have proper tools and had to use a lot of Michalson's equipment and Michalson had to purchase materials for the project that AdvanTech should have supplied. Michalson also hired additional workers to help move the project along. In addition, Michalson presented evidence that it had to supply the steel fiber needed for the job.[11]

Considering the evidence as a whole, we conclude the trial court reasonably could have found that AdvanTech was not entitled to an offset for the cost of the increased slab height. Moreover, the trial court's damages finding is not against the

---

[11] AdvanTech and Higareda presented evidence that AdvanTech provided the steel fiber, but we defer the trial court as factfinder to resolve any inconsistencies the evidence.

27

great weight and preponderance of the evidence. We overrule AdvanTech and Higareda's second issue. We turn to AdvanTech and Higareda's remaining two issues.

### III. No Error in Denial of Contract Damages to AdvanTech

AdvanTech and Higareda argue in their third issue that the trial court erred in failing to find that AdvanTech was entitled to breach of contract damages. As mentioned, when a party attacks the legal sufficiency of an adverse finding on an issue on which it has the burden of proof, it must demonstrate on appeal that the evidence establishes, as a matter of law, all vital facts in support of the issue. *Dow Chem. Co.*, 46 S.W.3d at 241. Accordingly, to prevail on this issue, AdvanTech and Higareda were required to present conclusive proof that AdvanTech was entitled to breach of contract damages from Michalson.

First, AdvanTech and Higareda argue that AdvanTech did not abandon the project, contending that Michalson refused to meet with AdvanTech before it left the job. Michalson points to evidence that Czapski emailed Higareda and said he could not meet on the requested day but "[r]egardless, no additional payments can be made until we have a written resolution on this project. Send everything you are claiming is owed and we will review to see if an amicable resolution can be accomplished before this is turned over to attorneys." A reasonable factfinder could reject AdvanTech's argument that Michalson refused to meet.

Second, AdvanTech argues it performed work and provided materials for which it was not paid, as follows: $5,150 for work performed, work performed after Michalson's last payment to AdvanTech; work performed outside AdvanTech's required scope of work; money Michalson owed AdvanTech for steel fibers that AdvanTech purportedly left on site; and an increase in cost for patching damaged panels after the site flooded. Michalson relies on evidence that AdvanTech did not

28

adequately staff the project or provide enough supplies and materials, and Michalson had to redo some of AdvanTech's work. Michalson, moreover, presented evidence that it had to hire workers to help AdvanTech with the work. Michalson also disagrees with AdvanTech's contention that AdvanTech did work outside the agreed scope of the contract and points to emails in which the parties discussed revisions to the project showing AdvanTech was aware of the changes and went forward with the project. The plans for the project were revised before AdvanTech started the job, and Michalson approved two change orders.[12] Michalson also presented evidence that it had to purchase steel fiber itself and presented evidence disputing AdvanTech's claim it left steel fiber on site.

Based on this record, AdvanTech and Higareda have not conclusively shown that AdvanTech was entitled to breach of contract damages. We overrule issue three.

## IV.    Misapplication of Construction Trust Funds

In their fourth and final issue, AdvanTech and Higareda assert the trial court erred in failing to find that Czapski misapplied construction trust funds under chapter 162 of the Property Code, which provides, "A contractor, subcontractor, or owner or an officer, director, or agent of a contractor, subcontractor, or owner, who receives trust funds or who has control or direction of trust funds, is a trustee of the trust funds." Tex. Prop. Code § 162.002. AdvanTech and Higareda contend AdvanTech is a beneficiary of construction trust funds that were held in trust by Czapski. *See id.* § 162.003. But a prime contractor is not liable under the statute if it pays its subcontractor for labor or materials supplied and does not otherwise misapply trust funds. *Dealers Elec. Supply Co. v. Scroggins Const. Co.*, 292 S.W.3d 650, 659 (Tex.

---

[12] AdvanTech and Higareda argued that whether a subcontract requires a change order has no bearing on a claim for breach of contract. The relevance of the approved change orders, however, is to show that the parties both agreed to certain changes to the scope of the project.

2009). A reasonable factfinder could have found on this record that AdvanTech and Higareda did not establish Czapski failed to pay AdvanTech what it was owed or that Czapski misapplied trust funds. We overrule AdvanTech and Higareda's fourth issue.

### *Conclusion*

Having sustained in whole or in part, AdvanTech's first issue, we reverse the trial court's judgment as to its award of attorney's fees. We otherwise affirm the trial court's judgment as challenged on appeal. We remand the case to the trial court for further proceedings limited to (1) reconsideration of attorney's fees and AdvanTech's breach of contract claim.


/s/    Frances Bourliot
       Justice


Panel consists of Chief Justice Christopher and Justices Bourliot and Spain.